**J. R. WOOD & SONS, Inc., v. UNITED STATES.**

**No. 44104.**

Court of Claims.

Oct. 5, 1942.

Clarence F. Rothenburg, of Washington, D. C. (Hamel, Park & Saunders, of Washington, D. C., on the brief), for plaintiff.

S. E. Blackham, of Washington, D. C., and Samuel O. Clark, Jr., Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyar, both of Washington, D. C., on the brief), for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

LITTLETON, Judge.

Upon the facts established by the record and set forth in the findings, we are of opinion that plaintiff is entitled to recover the excise taxes collected in the amount of $6,703.25 and interest of $1,349.92, together with $80.50 as the statutory penalty of twenty-five (25) percent alleged by the defendant to be due for failure of plaintiff to file excise tax returns for the months of June and August 1932. The incorporation and organization of the John R. Wood Sales Corporation by plaintiff were brought about by and were based upon a legitimate business reason resulting from certain merchandising difficulties which plaintiff had been, and then was, experiencing, as set forth in the findings. The organization of this corporation did not have for its real or primary purpose the avoidance or evasion by plaintiff of excise taxes on sales of imported merchandise. (Findings 7, 8, 9.) The facts show that in the early part of 1932, and prior to June 20 of that year, a decision to form a new corporation and to transfer the watch business to it had been reached by plaintiff's officers but no formal directors' meeting had, as yet, been held. On the morning of June 20, 1932, plaintiff's vice-president, who, with the manager of the watch department, had been immediately in charge of and familiar with the situation and the merchandising problems, secured the formal approval of the Board of Directors to the formation of a new corporation for the handling of the watch business, and the John R. Wood Sales Corporation was organized with a capital stock of $5,000, all of which was issued to plaintiff for cash. On the same day, plaintiff and the Sales Corporation entered into an agreement under which the latter purchased the entire watch business from plaintiff for $60,000 and gave in payment therefor his demand note for $60,000.

The watch business was only a portion of plaintiff's manufacturing and wholesale jewelry business. The watch business consisted of the watch inventory comprising movements and cases only, complete watches, repair parts, and certain assets and liabilities having to do only with the watch part of the business. Plaintiff's business as a wholesale manufacturer of low-priced jewelry of high quality, which existed as a partnership until January 30, 1930, started in 1850 and during the period subsequent thereto it successfully sold its merchandise to the average small stores throughout the United States. In 1928 it became the exclusive sales agent for the Omega watch, which it imported. This venture resulted in serious merchandising difficulties in plaintiff's business. These difficulties are described in the findings. By reason thereof certain officials of plaintiff, including the manager of the Watch Department who first advocated the idea, discussed the advisability of forming a separate organization with a different name to handle the watch business so as to overcome these merchandising problems. This matter was considered and discussed among plaintiff's officers and directors over a considerable period of time prior to June 20, 1932. Plaintiff's directors were conservative and were not convinced at first of the necessity for the organization of a separate corporation to handle the watch business. The merchandizing difficulties continued and became such that the directors came to realize the importance of having a separate organization to take over and operate the watch business, and formal action to that end was taken on June 20, 1932. In these circumstances and in view of the facts disclosed by the record, this case is distinguishable from Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596,

97 A.L.R. 1355; Higgins v. Smith, 308 U.S. 473, 60 S.Ct. 355, 84 L.Ed. 406; and Griffiths v. Helvering, 308 U.S. 355, 60 S.Ct. 277, 84 L.Ed. 319; Black, Starr & Frost-Gorham, Inc., v. United States, 39 F.Supp. 109, 94 Ct.Cl. 87, and other similar cases upon which the defendant relies. We think the present case is within the rule announced by the court in Chisholm v. Commissioner of Internal Revenue, 2 Cir., 79 F.2d 14, at pages 15 and 16 (certiorari denied 296 U.S. 641, 56 S.Ct. 174, 80 L.Ed. 456), in which the court said:

*"The question always is whether the transaction under scrutiny is in fact what it appears to be in form;* a marriage may be a joke; a contract may be intended only to deceive others; an agreement may have a collateral defeasance. In such cases the transaction as a whole is different from its appearance. True, it is always the intent that controls; and we need not for this occasion press the difference between intent and purpose. We may assume that purpose may be the touchstone, but the purpose which counts is one which defeats or contradicts the apparent transaction, not the purpose to escape taxation which the apparent, but not the whole, transaction would realize. In Gregory v. Helvering, supra, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596 [97 A.L.R. 1355], the incorporators adopted the usual form for creating business corporations; but their intent, or purpose, was merely to draught the papers, in fact not to create corporations as the court understood that word. That was the purpose which defeated their exemption, not the accompanying purpose to escape taxation; that purpose was legally neutral. *Had they really meant to conduct a business by means of the two reorganized companies, they would have escaped whatever other aim they might have had, whether to avoid taxes, or to regenerate the world.*

*"In the case at bar the purpose was certainly to form an enduring firm which should continue to hold the joint principal and to invest and reinvest it.* * * *"* [Italics supplied.]

■ In the case at bar the transaction was in fact what it appeared to be in form. The new corporation was not merely a shell or a scheme to avoid taxes. It was not intended as such. The purpose and intent in reality were to conduct the watch business by a separate corporation to the end that the merchandising problems and difficulties which had been experienced might be over-come and the watch business of the new corporation was so conducted. The fact that the organization of the new corporation had some effect on the amount of tax which plaintiff would otherwise have to pay does not, as was held by the court in Chisholm v. Commissioner of Internal Revenue, supra, require or justify the holding that plaintiff should nevertheless pay the excise tax upon the sales of watches by the new corporation.

In Superior Oil Co. v. State of Mississippi, 280 U.S. 390, 395, 50 S.Ct. 169, 170, 74 L.Ed. 504, the court said: "The fact that it desired to evade the law, as it is called, is immaterial, because the very meaning of a line in the law is that you intentionally may go as close to it as you can if you do not pass it."

In Bullen v. State of Wisconsin, 240 U.S. 625, 630, 36 S.Ct. 473, 474, 60 L.Ed. 830, the court also said: "We do not speak of evasion, because, when the law draws a line, a case is on one side of it or the other, and if on the safe side is none the worse legally that a party has availed himself to the full of what the law permits. When an act is condemned as an evasion, what is meant is that it is on the wrong side of the line indicated by the policy if not by the mere letter of the law."

■ A case involving the organization of a separate corporation cannot be condemned as an evasion merely because there is no change in location of its headquarters or because it does not have new and separate officers if there is a good business reason back of what was done and upon which reason the action taken was substantially based. Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596, 97 A.L.R. 1355, and other like cases, will, upon a careful reading, show this to be true beyond question. Thus the court, in the Gregory case, 293 U.S. at page 469, 55 S.Ct. at page 267, said: "The legal right of the taxpayer to decrease the amount of what otherwise would be his taxes, * * * cannot be doubted. United States v. Isham, 17 Wall. 496, 506, 21 L.Ed. 728; Superior Oil Co. v. [State of] Mississippi, 280 U.S. 390, 395, 396, 50 S.Ct. 169, 74 L.Ed. 504; Jones v. Helvering, 63 App.D.C. 204, 71 F.2d 214, 217. But the question for determination is whether what was done, apart from the tax motive, was the thing which the statute intended." Certainly what was done for the real reason it was done in the case at bar was something which the statute

contemplated and intended might be done. There was a real and good business reason and the action taken was to carry out that reason. The plaintiff may have come close to the line when it incorporated and organized the Sales Corporation at a time when a sales tax was soon to take effect but it did not pass the line, because the proof is sufficient to show that the Sales Corporation would have been created independently of the tax matter.

In the Gregory case, which is the basis of the subsequent cases cited and relied upon the Court, after making the above quoted statement, pointed out, page 469 of 293 U.S., page 267 of 55 S.Ct., 79 L.Ed. 596, 97 A.L.R. 1355, that the statute speaks of a transfer in pursuance of a plan of reorganization, "and not a transfer * * * by one corporation to another in pursuance of a plan having no relation to the business of either, as plainly is the case here."

The court then said: "Putting aside, then, the question of motive in respect of taxation altogether, and fixing the character of the proceeding by what actually occurred, what do we find? Simply an operation having no business or corporate purpose—a mere device which put on the form of a corporate reorganization as a disguise for concealing its real character."

What was said and held in the Gregory and other like cases supports plaintiff's position. Thus we come to the old question of degree, but we should not lose sight of the substantial business purpose which was the underlying reason for plaintiff's action in this case, and get confused by names, faces or form, and lean too far to the assumption that the Sales Corporation was a mere fiction, and should be looked through and ignored. As the court said in Klein v. Board of Supervisors, 282 U.S. 19, 23, 24, 51 S.Ct. 15, 75 L.Ed. 140, 73 A.L.R. 679: "Thus we come to the usual question of degree and of drawing a line where no important distinction can be seen between the nearest points on the two sides, but where the distinction between the extremes is plain. Hudson County Water Co. v. McCarter, 209 U.S. 349, 355, 28 S.Ct. 529, 52 L.Ed. 828, 14 Ann.Cas. 560. * * * But it leads nowhere to call a corporation a fiction. If it is a fiction it is a fiction created by law with intent that it should be acted on as if true. The corporation is a person and its ownership is a nonconductor that makes it impossible to attribute an interest in its property to its members." It is only, as the decided cases show, where the new corporation is a sham or scheme or a mere device intended primarily and fundamentally to bring about evasion that the separate corporate entity will be ignored,—mere semblance of a legitimate business motive is not enough. There was a real business purpose and motive in the J. R. Wood & Sons' action, and the mere fact that the tax problem or motive may have been present at the time final action was taken June 19, 1932 and may have served to speed action is not enough to condemn what was done as being entirely barren of substance. The evidence of record shows real substance from a business standpoint. If what was done be looked at from an income tax standpoint, it seems no one would under the circumstances question the propriety and legality of the organization of the Sales Corporation. It is only because a sales tax was about to go into effect that the tax motive is overemphasized. The fact that a new sales tax instead of an existing income tax was involved and was being newly imposed cannot serve to destroy the propriety and legality of what was done. The Agent of the Commissioner of Internal Revenue who investigated plaintiff's excise tax liability in May, 1935, found and reported to the Commissioner that upon the facts it was probably true that plaintiff would have organized the John R. Wood & Sons Sales Corporation even if the sales tax on imported watches had not been imposed. The Commissioner's written findings and decisions denying plaintiff's protests and claim for refund in respect of the tax against it show that he did not deny this. But because the Sales Corporation was organized at the time it was and because plaintiff and the new corporation had the same offices, directors and officers, he held that the Sales Corporation was only an "agent" of plaintiff. The Sales Corporation was an "agent" of plaintiff only in the sense that any corporation is the agent of its stockholders from whom it receives cash or property. The fact that two corporations carry on their separate businesses at the same location and with the same officers and directors may be evidence of a very close connection between the two corporations, and, in some cases, may be some evidence of evasion of the tax as that term is defined by the courts, but it is not conclusive. That situation may exist and be consistent with permissible and lawful action, as we think was the case here. The

evidence here covers the point. Plaintiff was in the midst of the depression. The proof shows that the Sales Corporation continued to carry on its business in the same building in which plaintiff had formerly carried on its watch business and that plaintiff and the Sales Corporation had the same officers, directors and offices for economic reasons. The question of when and under what circumstances a separate corporation should be ignored for tax purposes is an old one. Congress has long declined to say by legislation that, if the effect of reducing taxes enters into transfers of property or organization of corporations having substantial and legitimate business purposes, such transactions should be ignored for tax purposes. It is a question of intent and degree. Each case stands or falls on its facts. The courts have always carefully followed the rule that such transactions should not be ignored except where clearly justified on the ground that tax evasion was the underlying or predominant motive so that the action taken was outside the intent, if not the strict letter, of the taxing statute. We think the present case did not go beyond what the law permitted.

Judgment will be entered in favor of plaintiff for $9,121.72, with interest as provided by law. It is so ordered.