The **TOWN OF FAIRHAVEN, MASS.,**
**The Millicent Library and the Fair-**
**haven Water Company**
v.
**The UNITED STATES.**
No. 8–54.

United States Court of Claims.
July 12, 1956.

Allen G. Gartner, Washington, D. C., for plaintiffs.

Gilbert E. Andrews, Jr., Washington, D. C., with whom was Asst. Atty. Gen. Charles K. Rice, for defendant. Andrew D. Sharpe, Washington, D. C., was on the brief.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

LITTLETON, Judge.

The plaintiffs [1] brought this suit to recover Federal income taxes paid by the Fairhaven Water Company for the years

---

1. The plaintiffs are the Town of Fairhaven, Mass., the Millicent Library and the Fairhaven Water Company. By agreement of the parties, the claim presented in this action is limited to the issues of law and fact relating to the right of the Town of Fairhaven to recover.

1945, 1946, 1947, 1948, and 1950, under the provisions of section 116(d) of the Internal Revenue Code of 1939, as amended. 26 U.S.C. § 116(d).

The facts as found by the commissioner of this court are not in dispute. The Town of Fairhaven, Massachusetts (hereinafter referred to as the Town), is a municipal corporation established by an act of the Massachusetts Legislature on February 22, 1812. The government of the Town consists of a limited form of the New England Town Meeting. The Millicent Library (hereinafter referred to as the Library), was incorporated on December 1, 1892, under a law of Massachusetts pertaining to the incorporation of religious and other nonprofit organizations. The charter of the Library stated that the purpose for which it was organized was the "establishment and maintenance of a Library." Since it opened, the Library has been operated as a free, public library. The Fairhaven Water Company (hereinafter referred to as the Water Company), was organized in 1888 under the laws of Massachusetts pertaining to corporations organized for pecuniary profit. The purpose for which it was formed was to supply the inhabitants of the Town with water for domestic, manufacturing and other purposes, including the extinguishing of fires.

Henry H. Rogers, a native of the Town and a multimillionaire, was the principal benefactor of the Town. His gifts to the Town and its inhabitants included the Millicent Library, the Fairhaven High School, the Town Hall, the Rogers Grammar School, the Unitarian Memorial Church, and Cushman Park. Henry H. Rogers and his wife conveyed in trust a plot of land and the building situated thereon to their surviving children who, by deed of gift dated December 1, 1892, conveyed the property to the inhabitants of the Town. The deed read in pertinent part as follows:

"* * * whereas it is the purpose and intent of these grantors in making this conveyance to give to the Inhabitants of the Town of Fairhaven a Free Public Library as a memorial of our sister Millicent G. Rogers; and whereas a building appropriate to the uses of such a Library has now been erected on said land, and our wish is that said building shall forever remain as at present built without enlargement or alteration; and whereas it is also our purpose and design that the Inhabitants of Fairhaven, as a municipal corporation, shall be under no obligation whatever to support or maintain said library; * * *."

On May 22, 1893, Henry H. Rogers established a trust fund of $100,000 with the State of Massachusetts for the support of the Library. The State authorized the treasurer of the Commonwealth to receive and invest the $100,000 and to pay the annual income therefrom to the Library. During the years in suit, the Library annually received the sum of $2,500 from the trust.

In 1901, all the capital stock of the Water Company was given to the Library by Mr. Rogers. It was a matter of common knowledge in the Town that Mr. Rogers made the gift of the stock to the Library for its support.

The care, management, and control of the Library is vested in a board of 15 trustees, 12 of whom are required to be inhabitants of the Town. All the trustees serve without compensation for life, and vacancies on the board are filled by a vote of two-thirds of the remaining members. Prior to February 11, 1949, no officer of the Town was, by virtue of his office, an officer or trustee in the Library. In conducting its activities, the Library has endeavored to provide the entire community the best library services that were possible with the available resources. In addition to the central library, it has maintained six branch libraries and provided collection of books for supplementary reading in the schools. Since 1929, the Library has carried on a special program consisting of story hours and moving pictures for children. In 1950, the book stock of the Library consisted of 46,611 volumes and the circulation of its book per capita was 4.95. The

Library from 1892, until the latter part of 1948, was supported by the income from the trust fund established by Henry H. Rogers, by a small amount of miscellaneous gifts and donations and by dividends which the Library received as sole owner of the stock of the Water Company. These dividends provided the major portion of the funds used for the operation of the Library.

Since its incorporation in 1888, the business of the Water Company has been conducted by a board of directors, including three officers, who are elected annually by the stockholders. The water Company is regulated by the Massachusetts Department of Public Utilities and may not increase its rates except on application to and approval by the Department of Public Utilities. A substantial portion of the profits of the Water Company were distributed to the Library for its support.

In 1948, it became apparent that either the services of the Library would have to be curtailed or the Town would have to furnish financial aid. The question was presented to the Town Meeting on December 8, 1948, and it was unanimously voted to appropriate $4,000 to assist in paying the expenses of the Library for the year ending December 31, 1948. Similar appeals were made in subsequent years, and the Town made further appropriations for the Library in the amounts of $11,182 for 1949, and $11,716 for 1950. These annual appropriations were considered and acted upon in the same manner as appropriations for any department of the Town. An officer of the Town was made an ex officio member of the Board of Trustees of the Library in 1948 and continued as such thereafter as long as the Town appropriated money for the support of the Library.

The Town has never had any voice in the affairs of the Water Company. The Water Company charges the Town for all water used by it and the Water Company pays real estate, personal property and franchise taxes to the Town. The Water Company also pays taxes to the State and to the Town of Mattapoisett, Massachusetts.

The annual net income of the Water Company, as reported in its income and excess profits tax returns for the years involved here, the amount of Federal taxes paid, and the dates paid are shown in finding 19. The dividends paid by the Water Company to the Library during each of the years in suit were not deducted from the gross income of the Water Company before computing the amount of income tax due.

The Town filed with the Commissioner of Internal Revenue claims for refunds of the income taxes paid by the Water Company for 1945 on October 31, 1951, and for 1946, 1947, 1948, and 1950 on November 28, 1951. Suit in this court was filed on January 8, 1954. The claims for refunds were formally rejected on January 9, 1954.

Section 116(d) provides:

"In addition to the items specified in section 22(b), the following items shall not be included in gross income and shall be exempt from taxation under this chapter: * * *

"(d) *Income of states, municipalities, etc.*

"Income derived from any public utility or the exercise of any essential governmental function and accruing to any State, Territory, or the District of Columbia, or any political subdivision of a State or Territory, or income accruing to the government of any possession of the United States, or any political subdivision thereof.

"Whenever any State, Territory, or the District of Columbia, or any political subdivision of a State or Territory, prior to September 8, 1916, entered in good faith into a contract with any person, the object and purpose of which is to acquire, construct, operate, or maintain a public utility—

"(1) If by the terms of such contract the tax imposed by this chapter is to be paid out of the proceeds from the operation of such public utility, prior to any division of such proceeds between the person and the State, Territory, political subdivision, or the District of Columbia, and if, but for the imposition of the tax imposed by this chapter, a part of such proceeds for the taxable year would accrue directly to or for the use of such State, Territory, political subdivision, or the District of Columbia, then a tax upon the net income from the operation of such public utility shall be levied, assessed, collected, and paid in the manner and at the rates prescribed in this chapter, but there shall be refunded to such State, Territory, political subdivision, or the District of Columbia (under rules and regulations to be prescribed by the Commissioner with the approval of the Secretary) an amount which bears the same relation to the amount of the tax as the amount which (but for the imposition of the tax imposed by this chapter) would have accrued directly to or for the use of such State, Territory, political subdivision, or the District of Columbia, bears to the amount of the net income from the operation of such public utility for such taxable year."

 The Town contends that it is entitled to recover all the income taxes paid by the Water Company for the years involved in this proceeding. It contends in the alternative that it is entitled to recover a proportionate part of the taxes determined pursuant to paragraph (1) of section 116(d). The Town predicates both arguments on the assumption that it, as a political subdivision within the meaning of section 116(d), was and is the owner, beneficially at least, of the Library, which in turn owns all the stock of the Water Company. However, the Town, as a municipal corporation and political subdivision, is not the legal or equitable owner of the Library. The Library was given in trust to the "Inhabitants of Fairhaven" and not to the Town as a municipal corporation. The deed of conveyance provided "the Inhabitants of Fairhaven, as a municipal corporation, shall be under no obligation whatever to support or maintain said library." The Library was a separate non-profit corporation, directed and managed by a self-sustaining board of trustees. The Town, as a municipal corporation, had no control over the Library before it started contributing to its support. After it started contributing to the support of the Library it had only one ex officio member on the board of trustees. The inhabitants of the Town have no direct control over the library. The inhabitants of the Town, the Town, the Library and the Water Company are all separate legal entities.

The Town contends that these separate legal entities should be ignored and that what it calls substance should prevail over form. The general rule in Federal taxation is, of course, that the corporation must be considered an entity separate and distinct from its stockholders. Moline Properties, Inc., v. Commissioner, 319 U.S. 436, 63 S.Ct. 1132, 87 L.Ed. 1499, and the cases cited therein. The exception to that general rule is limited to sham transactions and situations involving transactions or matters that lack a business purpose and are a mere formality. See Ingle Coal Corporation v. United States, 127 F.Supp. 573, 131 Ct. Cl. 121, certiorari denied 350 U.S. 842, 76 S.Ct. 82, and the cases cited therein. There is, of course, no sham transaction involved in the instant case. Also, each of the legal entities had obvious legitimate reasons for a separate legal existence and many legal consequences flow therefrom, thus making the separate existence more than a mere formality.

 The majority of the courts that have interpreted section 116(d) have held that the political subdivision must be considered a separate legal entity from the business corporation that it owned

**594**

and had an interest in, and have refused to exempt the income of the corporation from taxation. Omaha Public Power District v. O'Malley, 8 Cir., 232 F.2d 805; City of Burlington v. United States, 8 Cir., 148 F.2d 887; Bear Gulch Water Co. v. Commissioner, 9 Cir., 116 F.2d 975, certiorari denied 314 U.S. 652, 62 S.Ct. 99, 86 L.Ed. 523; Citizens Water Co. v. Commissioner, 8 Cir., 87 F.2d 874, certiorari denied 302 U.S. 694, 58 S.Ct. 13, 82 L.Ed. 536. Contra, Keokuk & Hamilton Bridge, Inc., v. Commissioner, 8 Cir., 180 F.2d 58. It is clear from the above cases that the Inhabitants of the Town, the Town, the Library and the Water Company are separate legal entities, and as such, the first sentence of section 116(d) has no application because no income of the Water Company accrued to the Town as a political subdivision. The income of the Water Company, to the extent of the dividends, may have "accrued" to the Library; however, it cannot be said that it "accrued" to the Town. The benefit received by the Town was the indirect relief of a general obligation to furnish its inhabitants with an adequate library. The Town, therefore, is not entitled to recover the taxes paid by the Water Company.

Nor is the Town entitled to recover any of the taxes paid by the Water Company on its alternative ground for the same reason. The Town does not own or control the Library and, of course, does not have a contract with the Water Company and therefore does not come within the terms of paragraph (1) of section 116(d). The right to recover, if any, of the remaining parties in this case has not been considered since it is apparent that they have abandoned their claims. The Town of Fairhaven is not entitled to recover and therefore the plaintiffs' petition is dismissed.

It is so ordered.

JONES, Chief Judge, and LARAMORE, MADDEN and WHITAKER, Judges, concur.