**JUNIPER INVESTMENT COMPANY,**
a Delaware corporation
v.
**The UNITED STATES.**
**No. 397–60.**

United States Court of Claims.
Nov. 13, 1964.

Roy M. Tolleson, Jr., Detroit, Mich., for plaintiff.

Philip R. Miller, Washington, D. C., with whom was Asst. Atty. Gen. Louis F. Oberdorfer, for defendant. C. Moxley Featherston, Lyle M. Turner and Mitchell Samuelson, Washington, D. C., were on the brief.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS and COLLINS, Judges.

PER CURIAM.

This case was referred pursuant to former Rule 45(a) (now Rule 57(a)) to Trial Commissioner Herbert N. Maletz, with directions to make findings of fact and recommendations for a conclusion of law. The Commissioner has done so in an opinion and report filed on December 2, 1963. The plaintiff has excepted to the opinion and certain of the findings of facts; defendant has excepted only to one of the findings. The parties have filed briefs and the case has been argued orally. The court agrees with the Commissioner's findings, his opinion, and his recommended conclusion of law.

The court is also of the view that, if the corporate veil is not to be pierced, there is still a sound ground upon which the denial of plaintiff's claim can be based. The plaintiff is not entitled to

deduct a loss under Section 165(a) of the Internal Revenue Code of 1954 unless it actually suffered a loss which was not reasonably recoverable from someone else. East Coast Equipment Co. v. Commissioner, 222 F.2d 676, 678 (C.A.3, 1955); Whitney v. Commissioner, 13 T.C. 897, 901 (1949); cf. Allen-Bradley Co. v. Commissioner, 112 F.2d 333, 335 (C.A.7, 1940). The findings in this case show that the value of the legacies acquired by plaintiff was lost in 1956, but they fail to show that plaintiff could not have recovered this loss.

The court adopts the Trial Commissioner's findings and his opinion, as supplemented by the preceding paragraph of this opinion, as the basis for its judgment in this case. Plaintiff is not entitled to recover and the petition is dismissed.

## OPINION OF COMMISSIONER

The issue in this case is whether the plaintiff is entitled to a $70,000 loss deduction for the 1956 taxable year.

Plaintiff, Juniper Investment Company (Juniper), is a personal holding company. During the years 1951 through 1956 (which are the years pertinent to the case), Wendell W. Anderson and his sister, Suzanne A. Gardner, each owned 2,475 of Juniper's total outstanding issue of 5,000 shares. The remaining 50 shares were owned by the estate of their mother, Gustava D. Anderson, but were to pass to them under her will. Wendell W. Anderson controlled the business activities and decisions of Juniper, as well as being its president and a member of the board of directors. The other directors were Suzanne A. Gardner, who was also vice president of the company, and Clark A. Swart, the corporate treasurer. Mr. Swart had also served as business manager for Gustava D. Anderson.

In March 1951 Gustava D. Anderson died leaving an estate that had a gross value of over $3,000,000. She left a will naming her son, Wendell W. Anderson, as executor. Included in her will were a number of cash legacies, totaling $70,000,

to certain of her friends, relatives and long-standing employees. In the fall of 1951, her son and daughter, Mr. Anderson and Mrs. Gardner, decided to pay these legacies prior to settlement of the estate. This was occasioned by a humanitarian desire on their part to allow the specified beneficaries under their mother's will to receive the full amount of their legacies immediately rather than to wait for the final disposition of the estate which, it appeared, would take two or three years. To this end, Mr. Anderson and Mrs. Gardner arranged to have payment of the $70,000 in legacies made through Juniper, their personal holding company, upon the legacies being assigned to Juniper. On December 14, 1951, Juniper's board of directors voted to authorize the transaction and on the same day, Mr. Anderson, as executor of the estate, sent a letter to each of the legatees enclosing Juniper's check for the full amount of the legacy and an unsigned assignment to it of the legacy. This letter stated in part:

" * * * (M)y sister and I felt that you would like to have (the legacy) now rather than wait for the final disposition of the estate, which it appears will take two or three years to finally determine.

"We, therefore, have made arrangements though our personal family holding company to pay this legacy to you in exchange for having you assign to it all your right, title and interest to same. * * * "

Each person who received the legacy accepted the check and executed the assignment. No business or corporate purpose of Juniper was served by the transaction; the company was under no obligation to acquire the legacies; and it did not expect to make a profit therefrom. Despite the size of the estate, when the legacies were acquired by Juniper it did not reasonably appear that the estate's assets would be sufficient to pay the face amount of the $70,000 in legacies; it appeared rather that such assets would be adequate to pay only about $54,500 of this amount. Nor did it seem

likely that the income from the estate during the expected period of probate would provide enough additional funds to make up the deficit.

The estate filed a Federal estate tax return in June 1952. In 1955 the Internal Revenue Service, after audit of the return, proposed to assess a gross estate tax deficiency of some $3,400,000—a circumstance which apparently had not been foreseen when the legacies were acquired by Juniper. The proposed deficiency was contested and settled in 1956 by payment of an estate tax deficiency which, with interest, amounted to approximately $1,-400,000. After this deficiency payment was made, the remaining assets of the estate were insufficient to pay Juniper all or any part of the $70,000 in legacies and it has never been compensated for any portion of this amount by insurance or otherwise.

Against this background, plaintiff claims it is entitled to a loss deduction of $70,000 for the year 1956 pursuant to section 165(a) of the Internal Revenue Code of 1954 which, in respect to taxes on income, provides:

"§ 165.  Losses

"(a) *General rule.*—There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise.[1]"

Plaintiff contends that as a matter of law a corporate taxpayer is entitled under the specific language of section 165 (a) to deduct any loss, provided such loss has been sustained by the taxpayer during the taxable year involved and has not been compensated for by insurance or otherwise. Defendant, on the other hand, says that there is support for the view that deduction of losses incurred by a corporate taxpayer is limited to those which arise out of the corporate business. As the basis for their respective positions, both sides rely on James E. Caldwell & Co. v. Commissioner, 24 T.C. 597 (1955), reversed per curiam 234 F.2d 660 (6th Cir. 1956). That case involved a closely held corporation which was required to pay a judgment obtained against it, its stockholders, and others on the ground that they had fraudulently "milked the assets" of a second corporation. The majority of the Tax Court was of the opinion that the payment of the judgment was neither an ordinary and necessary business expense under section 23(a), nor a loss under section 23(f) of the Internal Revenue Code of 1939 because it was not incurred in a transaction that was pertinent to the conduct of the corporation's business.[2]

---

1. By contrast, section 165(c) of the Internal Revenue Code of 1954 provides for the following limitations on the losses of individuals:

   "(c) *Limitation on losses of individuals.*—In the case of an individual, the deduction under subsection (a) shall be limited to—

   "(1) losses incurred in a trade or business;

   "(2) losses incurred in any transaction entered into for profit, though not connected with a trade or business;"

   *        *        *        *        *

   All previous income tax laws have similarly differentiated between individual and corporate losses. See Internal Revenue Code of 1939, Sec. 23(e), Sec. 23(f); Revenue Act of 1938, Sec. 23(e), Sec. 23 (f), 52 Stat. 461; Revenue Act of 1936, Sec. 23(e), Sec. 23(f), 49 Stat. 1659; Revenue Act of 1934, Sec. 23(e), Sec. 23(f), 48 Stat. 689; Revenue Act of 1932, 47 Stat. 180; Revenue Act of 1928, Sec. 23(e), Sec. 23(f), 45 Stat. 800; Revenue Act of 1926, Sec. 214(a), (4), (5), 44 Stat. 26-7, Sec. 234(a) (4), 44 Stat. 41-2; Revenue Act of 1924, Sec. 214(a) (4), (5), 43 Stat. 270, Sec. 234(a) (4), 43 Stat. 283-84; Internal Revenue Act of 1921, Sec. 214(a) (4), (5), 42 Stat. 240, Sec. 234(a) (4), 42 Stat. 254-55; Internal Revenue Act of 1918, Sec. 214(a) (4), (5), 40 Stat. 1067, Sec. 234(a) (4), 40 Stat. 1078; Revenue Act of 1916, Sec. 5(a), 39 Stat. 759, Sec. 12(a), 39 Stat. 767-68; Revenue Act of 1913, Sec. II.B., 38 Stat. 167, Sec. II.G., 38 Stat. 172; Revenue Act of 1909 (applicable only to corporations), Sec. 38, 36 Stat. 113; Revenue Act of 1894, Sec. 27, 28 Stat. 553, Sec. 32, 28 Stat. 556.

2. In reaching this conclusion, the majority of the Tax Court cited (24 T.C. 611) the following statement made by Congress-

Judge Bruce, dissenting,[3] was of the view that the expenditure was deductible as a business expense under section 23 (a). He also stated that Congress had not imposed a requirement that losses, in order to be deductible, must have been incurred in a transaction incident to the normal and ordinary conduct of a corporate taxpayer's business. However, he added (24 T.C. 621) that the conclusion he had reached that the expenditure was deductible as a business expense "makes unnecessary a determination of the question whether the sum paid was deductible as a *loss under* section 23(f)." On appeal, the Court of Appeals reversed *per curiam* "for the reasons expressed in Judge Bruce's dissenting opinion." Supra. In these circumstances it would seem that the basis of the holding in Caldwell is that the expenditure in question was a business expense deductible under § 23(a) so that the case cannot be regarded as a firm precedent with respect to the deductibility of losses not related to a corporation's business. Cf. 5 Mertens Law of Federal Income Taxation (Rev. ed.) § 28.04, p. 9.

■ What is more, there is support for the view that section 165(a) allows the deduction of any uncompensated loss sustained by a corporate taxpayer, whether or not it was incurred in a transaction pertinent to the conduct of its business.[4] However, it is unnecessary to reach that question here; for even assuming that this is the proper construction of the section, the circumstances of the present case make it evident that the corporate entity should be disregarded and the loss attributed to Juniper's controlling stockholders, Mr. Anderson and Mrs. Gardner. It is the general rule, of course, that a corporation and its stockholders must be considered separate and distinct entities for Federal tax purposes. Moline Properties, Inc. v. Commissioner, 319 U.S. 436, 63 S.Ct. 1132, 87 L.Ed. 1499 (1943); New Colonial Co. v. Helvering, 292 U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1348 (1934); Higgins v. Smith, 308 U.S. 473, 60 S.Ct. 355, 84 L.Ed. 406 (1940); Burnet v. Commonwealth Imp. Co., 287 U.S. 415, 53 S.Ct. 198, 77 L.Ed. 399 (1932). But there is an exception in the case of "sham transactions and situations involving transactions or matters that lack a business purpose and are a mere formality." Town of Fairhaven, Mass. v. United States, 142 F.Supp. 590, 135 Ct.

man Hull during the floor debate on the Revenue Act of 1913, 50 Cong.Rec. 506:

"As to losses, these provisions primarily contemplate allowance for losses growing out of the trade or business from which the taxable income is derived, and generally termed trade losses, as distinguished from losses of capital or principal or losses incurred entirely apart from business transactions from which income is derived. A similar rule governs deductions for expenses."

Careful reading of the Congressional Record (50 Cong.Rec., pp. 505–09) makes it clear, however, that the above statement was made in connection with Sec. II.B. of the Act of 1913, 38 Stat. 167, dealing with the tax on individuals rather than Sec. II.G., 38 Stat. 172, dealing with the tax on *corporations.* In fact, the legislative history of section 165(a) and its predecessor sections is devoid of any indication as to whether or not Congress intended to restrict its applicability to losses pertinent to the conduct of the taxpayer's business. See Seidman

Legislative History of Federal Income Tax Laws, 1938–1861 (1938).

3. Judges Arundell and Johnson joined in the dissent.

4. See Law Op. 1092, CB June 1922, p. 270, modifying Law Op. 968, CB June 1920, p. 212. There the president and principal stockholder of a corporation used the funds of the company to speculate in shares of stock purchased on margin, and in certain instances used the stock of the corporation to cover his own marginal account. These activities were apparently known to the other stockholders and acquiesced in by them. The Solicitor of Internal Revenue ruled that even though the corporation had no power to trade in stocks on margin, it was nevertheless entitled under section 12(a) of the Revenue Act of 1916 to a deduction for losses sustained by it as a result of such trading. That section (which was similar in import to section 165(a)) allowed corporations to deduct from income "All losses actually sustained and charged off within the year * * *."

Cl. 782, 788 (1956). See also Black, Starr & Frost-Gorham, Inc. v. United States, 39 F.Supp. 109, 94 Ct.Cl. 87 (1941). Thus, in Higgins v. Smith, the Supreme Court stated (308 U.S. at 477, 60 S.Ct. at 358):

> "A taxpayer is free to adopt such organization for his affairs as he may choose and having elected to do some business as a corporation, he must accept the tax disadvantages.
>
> "On the other hand, the Government may not be required to acquiesce in the taxpayer's election of that form for doing business which is most advantageous to him. The Government may look at actualities and upon determination that the form employed for doing business or carrying out the challenged tax event is unreal or a sham may sustain or disregard the effect of the fiction as best serves the purposes of the tax statute. To hold otherwise would permit the schemes of taxpayers to supersede legislation in the determination of the time and manner of taxation. It is command of income and its benefits which marks the real owner of property."

"It is also well settled * * * that for the purpose of the proper administration of the taxing statutes, transactions between close or family corporations and its stockholders are subject to special scrutiny to determine their true purpose and effect; that transitory phases of an arrangement that add nothing of substance to the completed affair should be disregarded for tax purposes, and that substance and reality should prevail over form and sham." Ingle Coal Corp. v. United States, 127 F.Supp. 573, 578–579, 131 Ct.Cl. 121, 129 (1955) and cases there cited; cert. den. 350 U.S. 842, 76 S.Ct. 82, 100 L.Ed. 751.

Here it is apparent that Juniper, a closely held personal holding company, did not engage in the transaction in question on its own behalf, but rather acted as an alter ego on behalf of its two controlling stockholders who wanted for personal reasons to expedite payment of legacies from their mother's estate. In short, the transaction was undertaken by Juniper not for its own corporate or business reasons but solely for personal reasons of its shareholders; and they, it is clear, did not treat Juniper as a legal entity distinct and apart from themselves. Thus, it seems evident that the interposition of the corporate entity into the transaction was a mere formality.

■ Further, the reasonable inference from the record is that Juniper was utilized in this fashion as a means for tax minimization in respect to the transaction in issue. See e. g. Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596 (1935); Griffiths v. Commissioner, 308 U.S. 355, 60 S.Ct. 277, 84 L.Ed. 319 (1939); National Investors Corp. v. Hoey, 144 F.2d 466 (2d Cir. 1944); J. R. Wood & Sons, Inc. v. United States, 46 F.Supp. 877, 97 Ct.Cl. 140 (1942). It is significant in this connection that when the two stockholders, Mr. Anderson and Mrs. Gardner, arranged to have the corporate entity pay the face amount of the legacies in return for an assignment to it of the legatees' interest in the estate, it did not appear that the assets of the estate would be sufficient to pay the legacies in full. Hence, the stockholders must be deemed to have known at the time the legacies were paid that at least a partial loss would result to the person entitled to the legacies when the administration of the estate was completed. In addition, the payment of the legacies and the assignment of them to Juniper was passed upon by Mr. Anderson's personal attorney before the transaction was consummated. So it would seem that Mr. Anderson was not unaware of the tax consequences if he and Mrs. Gardner should pay the legacies personally rather than through Juniper. The consequences would be, of course, that as individuals they would obtain no loss deduction because of the limitations imposed by section 165(c) of the Code upon losses by individuals but that Juniper might obtain a deduction under the more liberal provisions in section 165(a) with respect to corporate losses—a de-

duction which would obviously benefit them indirectly as the shareholders of the company. Thus, the reasonable conclusion from the record is that Mr. Anderson and Mrs. Gardner arranged for payment of the legacies through Juniper as a method to reduce taxes upon the corporate taxpayer by way of a loss deduction to the extent that the legacies were not paid in full by the estate, which deduction would not have been available to them had they paid the legacies personally.