**TWIN CITY SHIPYARD, INC. and Packer River Corporation, Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

No. 299–87C.

United States Claims Court.

Oct. 11, 1990.

David F. Herr, Minneapolis, Minn., Atty. of Record, for plaintiffs.

Julie A. Helitzer, Washington, D.C., with whom was Asst. Atty. Gen. Stuart M. Gerson, for defendant.

## OPINION

REGINALD W. GIBSON, Judge:

### Introduction

Twin City Shipyard, Inc. (Twin City) and its purported assignee, Packer River Corporation (Packer River), seek payment of $123,414.33 allegedly wrongfully withheld by the Panama Canal Commission (PCC) under a contract between Twin City and the PCC for the construction and delivery of a tugboat. The single claim for relief in plaintiffs' complaint is for breach of contract. Plaintiffs have filed a motion for summary judgment asserting that—Twin City has performed all of its obligations under the contract including delivery, and final payment is due.

In opposition, defendant has filed a motion to dismiss the complaint as to Packer River and a cross-motion for summary judgment as to Twin City. Defendant first asserts that Packer River has no standing to sue for contract funds allegedly wrongfully withheld, since it lacks privity of contract with the United States. Defendant argues in the alternative that even if the contract was validly assigned to Packer River, it cannot sue for contract funds withheld when it is undisputed that no part of the funds has been paid out to third parties.

With respect to its motion for summary judgment, defendant argues that Twin City is obligated under modification # 4 of the contract to pay the subcontractors which contributed to the tugboat as a condition of release of the final payment. In support of its position, defendant cites contract language stating that Inland Holding Company (Inland Holding), a corporation with close ties to Twin City, will verify that subcontractors have been paid. Because the parties agree that not all of the subcontractors have been paid, defendant concludes that Twin City is not entitled to final payment.

For the reasons discussed hereinafter, defendant's motion to dismiss Packer River's claim is granted. As there are genuine issues of material fact relative to whether

the court should pierce the corporate veil and treat Twin City as the obligor under paragraph (3) of modification #4, with a duty to pay its subcontractors, the court denies the cross-motions for summary judgment.

### Facts [1]

The PCC, an agency of the United States Government, awarded contract no. PC–lp–1648 to Twin City, a Delaware corporation with its principal office in St. Paul, Minnesota, for a firm fixed price of $2,596,000. The contract required Twin City to build a harbor tugboat, the Paz, and to deliver same in Panama. Construction began in the spring of 1985.

In December of 1985, Packer River took a security interest in the Paz *contract proceeds,* based upon a $2,400,000 loan extended to Twin City by Packer River in 1984. Plaintiffs aver that Packer River has the senior security interest in the contract proceeds under Minnesota law and therefore is entitled thereto. Although Packer River has received some satisfaction of its loan to Twin City, Twin City's indebtedness to Packer River still exceeds the amount withheld under the contract in issue.

In the spring of 1986, the government learned that several subcontractors which had contributed to the construction of the Paz had not been paid. Twin City and the contracting officer exchanged several telexes, which ultimately led to the execution of modification #4 on April 2, 1986. Modification #4 provided in pertinent part as follows:

(2) *Page 5, clause 1–06. TITLE AND INSURANCE.*

\*　　\*　　\*　　\*　　\*　　\*

Add a new item as part "e.", to read as follows: "Twin City Shipyard, Inc. (TCS) and Inland Holding Company (IHC) will provide the [PCC] with certification that the Paz is free of all liens and judgments. This certification will include a search of the files of the Secretary of State for the state of Minnesota to determine all filings made under the Uniform

Commercial Code that touch and concern the Paz. Any lien recorded shall be released and duly recorded. Evidence of this event shall be provided to the [PCC]. A similar search of the county files in which Twin City Shipyard resides shall be made and a similar determination regarding judgments, liens, or any other matters of record which touch and concern the Paz shall be made. Any finding which would cloud the clear passage of title to the Paz shall be similarly removed and evidence of this shall be provided to the [PCC]. No release of funds shall be made until these certifications have been made by both Twin City Shipyard, Inc. and Inland Holding Co."

(3) *Page 5, Clause 1–08. PERFORMANCE BOND.* Add a new item as part "c.", to read as follows: "Inland Holding Company (IHC) will provide evidence in the form of a Letter of Certification indicating that the individual owners of IHC are indemnifiers of the performance bond issued by Employers Insurance of Wausau."

Add a new item as part "d.", to read as follows: "Inland Holding Company (IHC) will provide the Commission with letters of agreement with the subcontractors of the tug Paz that verify payment to these firms in a timely manner."

Inland Holding, Packer River, and Twin City have close ties. Inland Holding, Packer River, and TCS Holding Company appear to be the sole owners of Twin City. Packer River is Twin City's senior secured creditor with respect to the contract proceeds. Moreover, Lee Valenta apparently concurrently held the posts of Treasurer of Inland Holding, Treasurer of Packer River, Treasurer and Secretary of Twin City, and Secretary of TCS Holding Company; he later served as President of Twin City. Robert Tidball concurrently served as President of Inland Holding and President of Packer River. Robert J. Keith was one of the two individual stockholders of Inland Holding, as well as Secretary of Packer River; he later served as President of Packer River. Lee Valenta is the sole sig-

---

**1.** Except where otherwise indicated, the facts below are not in dispute.

natory to the virtually identical resolutions of the boards of directors of Inland Holding, TCS Holding Company, and Packer River, which authorized Twin City to execute an indemnity agreement with Wausau. The three resolutions and the indemnity agreement were all signed on the same day, and all of the signatures were notarized by the same person.

On or about June 13, 1986, Packer River "took over" Twin City. In that connection, on June 25, 1986, Packer River and Twin City executed an assignment agreement, under which Packer River agreed to assume Twin City's rights and duties under the Paz contract. Paragraph 7 of the assignment agreement required a novation among Twin City, Packer River, and the PCC, the effect of which was to cause a substitution of Packer River for Twin City as a party to the construction contract for the Paz, within 180 days thereof. Under paragraph 7, in the absence of a novation within said 180 days, the assignment agreement was to "be null and void." On June 26, 1986, relying upon the assignment agreement, the PCC released $1,052,991.25 in progress payments to Packer River.

At about the same time, the Paz underwent sea trials. The PCC believed that the Paz's propulsion and rudder system was damaged in a collision with some floating debris during the trials, and requested that the Michigan Wheel Corporation (Michigan Wheel) perform an inspection of the Paz. Michigan Wheel had been a subcontractor on the Paz contract, and was owed $61,-539.33 by Twin City. Michigan Wheel refused to perform the inspection until it was paid for its prior work on the Paz. The PCC promised that Michigan Wheel would be paid, and the inspection was performed.

Meanwhile, the PCC requested an advance ruling from the Comptroller General on the issue of whether contract funds could be used to pay Michigan Wheel directly, or Michigan Wheel and Twin City jointly. On August 4, 1986, the Paz was delivered to the PCC, and was accepted.

Based upon the fact that some subcontractors still had not been paid, the PCC withheld $119,883.77 in contract funds.

On December 22, 1986, the 180-day period for executing a novation making Packer River a party to the Paz contract expired without a novation having been effectuated. On that day, the assignment became "null and void" by its own terms.

The Comptroller General ruled in early 1987 that the PCC could not enforce Michigan Wheel's right to payment from Twin City, but that the PCC could pay Michigan Wheel, under a *quantum meruit* rationale, the reasonable value of the services it provided, from funds other than those committed to the Paz contract. *Matter of Panama Canal Commission*, No. B–224953 (January 9, 1987).

On February 5, 1987, a PCC representative informed Packer River that it believed the assignment to Packer River was void, due to the failure to execute a novation. One week later, Twin City and Packer River submitted a certified claim to the contracting officer, seeking the funds withheld. On February 27, 1987, Twin City's attorney informed the PCC that on December 28, 1986, the assignment agreement had been amended to extend the deadline for executing the novation agreement to June 23, 1987.[2] To date, a novation agreement has not been executed, and the government has never formally approved the assignment.

On May 27, 1987, not having received a decision from the contracting officer on their certified claim, Twin City and Packer River filed their complaint in this court.

*Contentions of the parties*
A. Plaintiffs

Plaintiffs initially argue that the fact that subcontractors have not been paid is not a valid basis for withholding payment. This is so because the Paz has been delivered to and accepted by the PCC, and therefore, plaintiffs have fulfilled their ob-

---

**2.** Apparently, the amendment had no effect in that the assignment agreement had become null and void by its own terms six days before the amendment was executed. It is questionable whether one can amend a void agreement.

ligations under the contract and are entitled to final payment. Plaintiffs flatly state in their reply brief that modification # 4 "does not obligate [Twin City] to pay anyone."

Plaintiff Packer River advances three grounds which it believes entitle it to payment: (i) Packer River has a perfected security interest in the contract proceeds; (ii) Twin City assigned the right to payment under the contract to Packer River; and (iii) even if the assignment to Packer River was defective, the government is estopped from raising the defense of improper assignment, since the government recognized the assignment by its conduct in that it released a payment of $1,052,991.25 to the assignee.

### B. Defendant

In its motion to dismiss Packer River's claim, defendant argues that the attempted assignment between Packer River and Twin City is void, due to the fact that the novation was never executed. Thus, Packer River lacks privity of contract with the United States, and therefore cannot maintain an action for breach of contract. Defendant further argues in the alternative that even if the assignment were valid, an assignee cannot maintain an action to recover contract funds, except where the funds have been wrongfully paid out to a third party. Here, the parties have stipulated that none of the $119,883.77 withheld has been paid out to third parties.

In its cross-motion for summary judgment, defendant argues that under modification # 4, Inland Holding promised to pay the subcontractors who contributed to the construction of the Paz. Inland Holding has close ties to Twin City, and for purposes of modification # 4, defendant contends, the two entities should be treated as one, *i.e.*, by piercing the corporate veil. Since the parties have stipulated that not all the subcontractors have been paid, defendant concludes, Twin City has not fulfilled its obligations under modification # 4, and thus, it is *not* entitled to final payment.

### Scope of the court's opinion

In deciding the present motions, the court will address two issues: (i) whether Packer River, though not in privity with the defendant, can maintain its suit to recover contract funds withheld, either as Twin City's senior secured creditor, an express assignee of the Paz contract, or a constructive assignee of the Paz contract; and (ii) whether defendant has raised a genuine issue of material fact relative to whether the court should pierce the corporate veil and treat Inland Holding and Twin City as one entity for purposes of modification # 4.

### Discussion

### I. Jurisdiction over Packer River's claim

■ Two insurmountable obstacles stand in the way of Packer River's claim that the court has jurisdiction. First, since a novation was never executed making Packer River a party to the Paz contract with PCC, Packer River lacks the requisite privity of contract to sue the United States under the Tucker Act. Second, assuming *arguendo* that Packer River is an assignee of the contract (either expressly or constructively), an assignee of a government contract can maintain an action to recover funds withheld *only* where it alleges that the funds have been wrongfully paid out to a third party. Here, Packer River has stipulated that no part of the funds has been paid out to a third party.

### A. The Tucker Act, 28 U.S.C. § 1491

This court's grant of jurisdiction is found in the Tucker Act, 28 U.S.C. § 1491, which provides in relevant part:

(a)(1) The United States Claims Court shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

. . . . .

(2) ... The Claims Court shall have jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under section 10(a)(1) of the Contract Disputes Act of 1978 [codified at 41 U.S.C. § 609(a)(1)].

Plaintiffs' complaint asserts jurisdiction under § 1491(a)(1), on the basis of an express contract with the United States, as well as by a contractor under the Contract Disputes Act pursuant to § 1491(a)(2). In any event, the court concludes that it cannot take jurisdiction over Packer River's claim under either subsection (a)(1) or (a)(2) of § 1491.

"[P]rivity of contract is an indispensable prerequisite to the maintenance of a suit in this court against the government under the Tucker Act." *Thomas Funding Corp. v. United States*, 15 Cl.Ct. 495, 499 (1988) (relying on *Erickson Air Crane Co. v. United States*, 731 F.2d 810 (Fed.Cir.1984)). Here, the parties agree that a novation did not occur converting Packer River to a party to the Paz contract with defendant, and thus, Packer River lacks the requisite privity of contract with the United States to maintain its claim in this court.

▇▇ It should also be noted that a valid assignment of contract proceeds, standing alone, does not create privity of contract between the assignee and the United States. *Thomas Funding Corp.*, 15 Cl.Ct. at 499–500 (relying on *Produce Factors Corp. v. United States*, 467 F.2d 1343, 199 Ct.Cl. 572 (1972)). Thus, even if the Paz contract was validly assigned to Packer River, in the absence of a novation, this court cannot hear Packer River's claim. As the court stated in *Produce Factors:*

> [T]he plaintiff, whose relationship with the United States arose only because of its status as an assignee under the Assignment of Claims Act, as amended, did not have privity of contract or any contractual relationship with the Government. Therefore, its breach of contract

action cannot be maintained. Plaintiff had only the rights of an assignee of government contract proceeds under the assignment statute.

199 Ct.Cl. at 578.

▇▇ For similar reasons, § 1491(a)(2) also does not provide the court with a basis for exercising jurisdiction over Packer River's claim. Section 1491(a)(2) allows the court to hear claims by "contractors" arising under § 10(a)(1) of the Contract Disputes Act (CDA). "Contractor" is defined in the CDA as "a party to a government contract other than the government." 41 U.S.C. § 601(4). The parties agree that Packer River was not an original party to the Paz contract, and additionally a novation was never executed making Packer River a party to the contract with the government. As is fully explicated in *Thomas Funding Corp.*, 15 Cl.Ct. at 501, the CDA's policy of providing a single point of contact between the government and the contractor would be frustrated if entities not parties to a contract could sue the government on the contract. Accordingly, the court can find no basis for allowing Packer River to maintain its claim under the Tucker Act.[3]

B. The Assignment of Claims Act, 31 U.S.C. § 3727, 41 U.S.C. § 15

▇▇ A party to whom a government contract has been validly assigned under the Assignment of Claims Act, 31 U.S.C. § 3727, 41 U.S.C. § 15, is entitled to sue the government *in order to recover for work performed by the contractor*. *Thomas Funding Corp.*, 15 Cl.Ct. at 502 (citing cases). However, this is a qualified right; such a party cannot maintain an action for breach of contract, but only to recover money wrongfully paid to a third party. *Id.* The parties have stipulated that no part of the Paz contract proceeds has been paid out to a third party, so the Assign-

---

**3.** Packer River implicitly argues that the court could award it the contract funds, based *solely* upon Packer River's alleged perfected security interest in the contract proceeds. Suffice it to say that this court is one of limited jurisdiction, with the power to award money damages to parties demonstrating that the sovereign has breached a contractual, regulatory, statutory, or Constitutional duty. Resolving debtor-creditor disputes between *private* parties is beyond the authority of this tribunal.

ment of Claims Act provides no basis for Packer River to maintain its claim.

■ Thus, two issues briefed by the parties need not be reached by the court. First, the court need not decide whether Packer River is a valid assignee. The court merely notes that it has serious doubts as to the validity of the assignment, due to the failure to execute the novation required by the assignment agreement. Moreover, the Assignment of Claims Act allows assignment of contract proceeds only to banks, trust companies, or other financing institutions, *United California Discount Corp. v. United States*, 19 Cl.Ct. 504, 507 (1990), and it is not clear from this record that Packer River meets these requirements.

Second, the court need not reach Packer River's argument that the government should be estopped from raising the defense of improper assignment, because the PCC ratified the assignment by its conduct (primarily by releasing payments to Packer River). While there is some support in the case law for the proposition that under certain circumstances the government can ratify an assignment by conduct, *see, e.g., Tuftco Corp. v. United States*, 614 F.2d 740; 222 Ct.Cl. 277 (1980), there is no necessity to decide whether this is such a case. Assuming *arguendo* that the government is foreclosed from challenging the validity of the assignment, or even assuming that the Paz contract was validly assigned to Packer River, plaintiffs agree that no part of the contract funds withheld has wrongfully been paid out to third parties. Joint Findings of Uncontroverted Fact, para. (4).

For the foregoing reasons, the complaint is dismissed as to plaintiff Packer River Corporation.

## II. *Cross-motions for summary judgment*

### A. Summary judgment standards

■ Pursuant to Rule 56(c) of the Rules of the United States Claims Court, the court is empowered to enter judgment upon the motion of a party if the pleadings, affidavits, and other papers before the court show that there is no genuine issue as to any material fact, and as a matter of law the moving party is entitled to judgment. It is settled law that contract interpretation is a matter of law, generally susceptible to a decision by summary judgment. *Government Systems Advisors, Inc. v. United States*, 847 F.2d 811, 812 n. 1 (Fed.Cir.1988). Moreover, the parties to the present dispute have filed cross-motions for summary judgment, so ostensibly, they believe there are no material facts in dispute.

■ Notwithstanding the foregoing, the fact that both parties have moved for summary judgment does not, *ipso facto*, mean that the court must grant one party's motion. *Prineville Sawmill Co. v. United States*, 859 F.2d 905, 911 (Fed.Cir.1988). Rather, it simply means that the court must evaluate each party's motion on its own merits, thus we shall proceed accordingly. *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed.Cir. 1987).

### B. Twin City's Motion for Summary Judgment

■ The government's sole basis for withholding payment is that it contends that Twin City promised to pay its subcontractors in modification #4 prior to the release of final payment. It is undisputed and concluded that some subcontractors that contributed to the construction of the Paz have yet to be paid. The government relies on paragraph (3) of modification #4, new item "d." as the basis for Twin City's obligation, which states that "Inland Holding Company (IHC) will provide the [PCC] with letters of agreement with the subcontractors of the tug Paz that verify payment to these firms in a timely manner." Twin City, on the other hand, flatly states that this language does not obligate *Twin City* to pay anybody.

The government counters the disavowal by arguing that "plaintiffs should not be permitted to hide behind a veil of alleged corporate separateness as a basis to deny their obligations under modification num-

ber 4." Stated differently, the government is simply urging the court to pierce the corporate veil and treat Twin City as the promisor/obligor under paragraph (3) of modification # 4 to pay the subcontractors as a condition of defendant's release of the final payment. The court will do so, *if* the government can show as a matter of fact that Inland Holding was a mere shell, manipulated for the purpose of preserving for Twin City through Packer River the remainder of the contract proceeds.

▌ As a general rule, it is hornbook law that separate and distinct corporate entities are not held liable for one another's obligations. *BLH, Inc. v. United States,* 13 Cl.Ct. 265, 272 (1987). However, disregard of the corporate fiction is not without precedent in this circuit, where it is clear that formal corporate arrangements are a mere sham and have no valid business purpose, but rather, are aimed at avoiding the consequences of an efficacious transaction. *See, e.g., Minnesota Mining and Manufacturing Co. v. Eco Chem, Inc.,* 757 F.2d 1256 (Fed.Cir.1985) (separate corporation established outside forum state during pendency of patent infringement suit was properly joined as defendant in infringement suit, where all assets of allegedly infringing corporation had been transferred to newly-formed corporation; court will disregard corporate separateness where corporation is manipulated to escape liability on a judgment); *cf. Juniper Investment Co. v. United States,* 338 F.2d 356, 168 Ct.Cl. 160 (1964).

▌ Therefore, a court should hold one corporation liable for the obligations of another only where: (i) one corporation completely dominates the other; (ii) such domination is used to commit fraud or injustice, that is, to avoid the obligation at issue; and (iii) such domination causes the unjust loss. *BLH, Inc.,* 13 Cl.Ct. at 272–273 (citations omitted).

▌ As to prong (i), the court must take many *factors* into consideration in order to determine whether one corporation has dominated another to such an extent that the other has lost its independent existence.

For example, the court must consider such operative facts as to whether:

(1) distinct and adequately capitalized financial units are incorporated and maintained; (2) daily operations of the two corporations are separate; (3) formal barriers between management of the two entities are erected, with each functioning in its own best interests; and (4) those with whom the corporations come in contact are apprised of their separate identity. Other factors [to be considered] are: (1) common stock ownership; (2) the method and degree of financing [of one corporation by the other]; (3) common directors or officers; (4) separate books and accounts; (5) common business departments; and (6) extent to which contracts between [the two corporations] favor one over the other.

*BLH, Inc.,* 13 Cl.Ct. at 273 (quoting *Miles v. American Tel. & Tel. Co.,* 703 F.2d 193, 195–196 (5th Cir.1983)).

Through correspondence, contract documents, and other papers, the government at bar has made a sufficient showing to defeat Twin City's motion for summary judgment. That is to say, the government has raised a genuine issue of material fact relative to whether Inland Holding was acting as a mere instrumentality or alter ego of Twin City and its successor, Packer River, whereas in truth and in fact they are one and the same. In this connection, the government has shown that:

—Inland Holding owns an unspecified portion of Twin City stock; Packer River, Twin City's senior secured creditor with respect to the contract proceeds, and TCS Holding Co. are the other shareholders;

—Lee Valenta concurrently held the posts of Secretary and Treasurer of Twin City, Secretary of TCS Holding Co., Treasurer of Packer River, and Treasurer of Inland Holding. He later served as President of Twin City, when he certified that the claim to the contracting officer was accurate;

—Robert Tidball was simultaneously President of Packer River and President of Inland Holding;

—The Secretary of Packer River, Robert Keith, held stock in Inland Holding. He later served as President of Packer River, and signed the certified claim to the contracting officer on behalf of Packer River;

—Packer River allegedly lent Twin City over $2,000,000, and later took over Twin City;

—In one day, the directors of Inland Holding, TCS Holding Co., and Packer River ostensibly met and passed resolutions authorizing the corporations to serve as sureties on the performance bond, which was a condition to the issuance of modification # 4; the resolutions were all signed that same day by Lee Valenta, as were the corporate acknowledgments of the indemnity agreement with Wausau. All the signatures were notarized by the same person;

—The President of Twin City signed modification # 4, which contains language appearing to obligate Inland Holding to perform certain acts; and

—Inland Holding complied with the provisions of modification # 4 relating to the performance bond, even though Inland Holding was not a party to the underlying contract or to the modification. In other words, Inland Holding lived up to terms in Twin City's contract, a contract which apparently was not enforceable against Inland Holding.

From the foregoing, the court cannot say conclusively that Inland Holding was a mere shell being manipulated by Twin City and Packer River. There are a plethora of operative facts that the court does not know regarding the capitalization of the corporations, whether regular meetings of directors were held, whether assets of the corporations were strictly segregated, whether each corporation had its own policies, and other matters outlined above which bear on the propriety of this court piercing the corporate veil. It is sufficient for the present to say that the court has serious questions whether, based on the relationships detailed above, the principals of Packer River and Twin City set out to preserve for themselves the remainder of the contract proceeds, and to frustrate one of the purposes of modification # 4, i.e.,

ensuring that subcontractors were paid. There are grave factual issues that must be ventilated by a trial on the merits.

This leads the court to prongs (ii), whether there was sufficient domination of one corporation by another to commit fraud or injustice, and (iii), whether such domination will cause a loss. The factual question is whether Twin City agreed that Inland Holding would pay the subcontractors because it knew that Inland Holding could *not* be forced to pay the subcontractors. Since Twin City contends that it did not expressly promise to pay the subcontractors itself, it apparently made sure it could argue what it argues today: that it has fulfilled its obligations under the contract, and final payment is due. Of course, if final payment were made today as demanded, the funds would bypass the subcontractors who would be the losers and go directly to Twin City's successor, Packer River, which arguably has a perfected security interest in the contract proceeds.

Thus, elaborate corporate arrangements, combined with the inartful drafting of modification # 4, *appear* to have resulted in the frustration of the Paz subcontractors' ability to recover on their judgments against Twin City. *See Minnesota Mining and Manufacturing Co.,* 757 F.2d at 1265 (where corporation is purposely manipulated so as to "thwart ... recovery of [a] judgment," courts feel "most comfortable in using their equitable powers to sweep away the strict legal separation between corporation and stockholders"). Prongs (ii) and (iii), then, appear to be satisfied, *i.e.,* the apparent domination of Inland Holding by Twin City and Packer River raising grave factual questions to require a trial to determine whether the overall objective was to avoid Twin City's obligation to its subcontractors' detriment. Finally, there is also the factual question as to whether such domination, at this posture at least, caused the subcontractors' losses. For the foregoing reasons, the court denies Twin City's motion for summary judgment.

## C. The Government's Cross-motion for Summary Judgment

■ The government's cross-motion for summary judgment is also denied, because

the court cannot determine, *on the present record,* whether as a matter of fact and law Twin City, in effect, promised to pay the Paz subcontractors. The government has asked the court to treat Twin City as the obligor under modification # 4, paragraph (3), new item "d.", but without hearing additional evidence, the court cannot conclude that piercing the corporate veil is appropriate. Moreover, the same unanswered factual questions justifying the denial of plaintiff's motion also requires the denial of defendant's motion.

*Conclusion*

For the reasons set forth above, defendant's motion to dismiss the complaint as to plaintiff Packer River Corporation is GRANTED and, there being no just reason for delay, the Clerk shall enter judgment relative thereto pursuant to RUSCC 54(b). Twin City's motion for summary judgment is DENIED; defendant's cross-motion for summary judgment is also DENIED. The following pretrial schedule shall obtain:

1. All discovery shall be completed on or before December 10, 1990.

2. The meeting of counsel called for by paragraph 10 of Section V of Appendix G shall be held by January 11, 1991.

3. The memoranda and motion called for by paragraphs 11–17 of Section V of Appendix G shall be filed on or before February 8, 1991.

4. The pretrial conference shall be held at 10:00 a.m., February 15, 1991, at the National Courts Building, 717 Madison Place, N.W., Washington, D.C. 20005. The exact courtroom location will be posted in the lobby at that time. A trial date will be set at that time.

IT IS SO ORDERED.